IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MAG-DOLPHUS, INC., GERALD          §
MAGGARD, and JAN MAGGARD,          §
                                   §
          Plaintiffs,              §
                                   §
v.                                 §
                                   §          CIVIL ACTION NO. H-13-0852
THE OHIO CASUALTY INSURANCE        §
CO., SPRING INSURANCE AGENCY,      §
INC., DALLAS NATIONAL INSURANCE    §
COMPANY, and IRONWOOD              §
CONSTRUCTION, INC.,                §
                                   §
          Defendants.              §

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Mag-Dolphus, Inc., Gerald Maggard, and Jan Maggard, bring this action against defendants, The Ohio Casualty Insurance Company ("Ohio Casualty"), Spring Insurance Agency, Inc. ("Spring Insurance"), Dallas National Insurance Company ("Dallas National"), and Ironwood Construction, Inc. ("Ironwood"), for claims arising from a commercial structure's leaky roof. Plaintiffs assert claims for breach of contract, violation of the Texas Deceptive Trade Practices Act ("TDTPA") and the Texas Insurance Code, breach of the duty of good faith and fair dealing, misrepresentation, fraud by negligent misrepresentation, waiver, and estoppel. Pending before the court are the following motions: (1) Defendant Dallas National's Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6) (Docket Entry No. 34); (2) Defendant The Ohio

Casualty Insurance Company's Motion for Summary Judgment ("Ohio Casualty's MSJ") (Docket Entry No. 39) based on res judicata, collateral estoppel, and accord and satisfaction, (3) Defendant Spring Insurance Agency, Inc.'s Motion for Summary Judgment ("Spring Insurance's MSJ") (Docket Entry No. 45); (4) Defendant The Ohio Casualty Insurance Company's Motion for Summary Judgment on Negligent Workmanship Exclusion ("Ohio Casualty's MSJ on Negligent Workmanship Exclusion") (Docket Entry No. 51); (5) Plaintiffs Mag-Dolphus, Inc., Gerald Maggard, and Jan Maggard's Opposed Motion for Leave to Supplement Expert Report (Docket Entry No. 59); and (6) Defendant The Ohio Casualty Insurance Company's Motion to Compel Discovery from Plaintiffs (Docket Entry No. 67). For the reasons stated below, Dallas National's motion to dismiss will be declared moot; Ohio Casualty's motion for summary judgment on the bases of res judicata, collateral estoppel, and accord and satisfaction will be denied; Spring Insurance Agency's motion for summary judgment will be granted; Ohio Casualty's motion for summary judgment based on negligent workmanship will be granted; plaintiffs' motion to supplement expert report will be granted; and Ohio Casualty's motion to compel discovery will be declared moot.

## I.  **Factual and Procedural Background**

Plaintiffs, Mag-Dolphus, Inc. and its owners, Gerald and Jan Maggard, own a commercial structure located in Spring, Texas. Prior to the events leading to this action, defendant Spring

Insurance sold plaintiffs an insurance policy issued by Ohio Casualty to cover their structure. Plaintiffs allege that they specified to Spring Insurance Agency that they sought a business insurance policy that covered against all perils possible.

In September of 2008 Hurricane Ike damaged the structure. Plaintiffs filed an insurance claim for the hurricane damage. Following a dispute over the value of the claim plaintiffs invoked appraisal. On December 31, 2009, the Umpire entered an appraisal award of $191,594.16 for replacement cost value of the damaged structure. Ohio Casualty paid plaintiffs the award amount, minus depreciation of $52,759.81. Because plaintiffs disagreed with the valuation of the appraisal award, plaintiffs sued Ohio Casualty in state court on September 10, 2010. Ohio Casualty removed the lawsuit to federal district court based on diversity jurisdiction, where it was assigned Civil Action No. 4:11-CV-1525. On March 7, 2012, Ohio Casualty filed a motion for summary judgment. On September 12, 2012, the court granted Ohio Casualty's motion for summary judgment after concluding that plaintiffs' acceptance of the appraisal award precluded them from asserting common law or statutory claims against their insurer.

Following receipt of the appraisal award, plaintiffs selected Ironwood Construction to install a new roof on their structure. Ironwood Construction started work on the new roof in September of 2010 and finished it on or about November 12, 2010. Plaintiffs used funds received from the appraisal award to pay Ironwood

Construction for the new roof. Once the roof was completed plaintiffs sent the invoices to Ohio Casualty, and Ohio Casualty paid plaintiffs the recoverable depreciation of $52,759.18, and renewed the insurance coverage on the structure.

Plaintiffs allege that in early November of 2011, approximately one year after the new roof was installed, a heavy storm caused water to enter their structure through the roof. Plaintiffs allege that they filed a claim for the November 2011 storm damage under their Ohio Casualty Insurance policy, but that Ohio Casualty Insurance refused either to conduct a reasonable investigation or to settle their claim. On or about February 4, 2013, plaintiffs commenced suit in state court in Montgomery County, Texas, against Ohio Casualty. On March 26, 2013, defendants removed the suit to this court based on diversity jurisdiction (Docket Entry No. 1). On October 7, 2013, Plaintiffs filed a First Amended Complaint (Docket Entry No. 17), adding defendants Spring Insurance, Ironwood, and Ironwood's insurer, Dallas National.

On December 16, 2013, Dallas National filed a Motion to Dismiss (Docket Entry No. 34). On December 30, 2013, plaintiffs filed a Stipulation of Dismissal as to Dallas National Insurance Company Only (Docket Entry No. 37), and the court entered an Order (Docket Entry No. 38) dismissing all claims asserted against Dallas National with prejudice (Docket Entry No. 38). Thus, Defendant Dallas National's Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6) (Docket Entry No. 34) will be declared moot.

-4-

On January 6, 2014, Ohio Casualty filed its Motion for Summary Judgment (Docket Entry No. 39), and on January 31, 2014, Spring Insurance filed its Motion for Summary Judgment (Docket Entry No. 45).   In response, on February 3, 2014, plaintiffs filed an Unopposed Motion for Leave to File Second Amended Complaint (Docket Entry No. 47), which the court granted by Order entered on February 4, 2014 (Docket Entry No. 48).   Thus, the live complaint is Plaintiffs' Second Amended Complaint (Docket Entry No. 49).   On February 17, 2014, Ohio Casualty filed its Motion for Summary Judgment on Negligent Workmanship Exclusion (Docket Entry No. 51); on March 18, 2014, plaintiffs filed their Opposed Motion for Leave to Supplement Expert Report (Docket Entry No. 59); and on July 3, 2014, Ohio Casualty filed its Motion to Compel Discovery from Plaintiffs (Docket Entry No. 67).

## II.   Summary Judgment Standard

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.   Fed. R. Civ. P. 56(c).   Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).   The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the moving party meets this burden, Rule 56(c) requires the nonmovant to present admissible evidence creating genuine issues of material fact for trial. Id.

### III. **Analysis**

In their First Amended Complaint (Docket Entry No. 17) plaintiffs asserted claims for negligence, breach of contract, breach of the duty of good faith and fair dealing, misrepresentation, waiver, estoppel, and violation of the TDTPA and the Texas Insurance Code against defendants Ohio Casualty, Spring Insurance, Ironwood, and Dallas National. In response to the filing of Ohio Casualty's initial motion for summary judgment, plaintiffs sought and obtained leave to file Plaintiffs' Second Amended Complaint (Docket Entry No. 49). Plaintiffs' Second Amended Complaint is virtually identical to their First Amended Complaint except that it does not assert any claims for negligence and does not assert any claims against defendant Dallas National.[1]

---

[1]See Plaintiffs Mag-Dolphus, Inc., Gerald Maggard, and Jan Maggard's Brief in Opposition to Defendant The Ohio Casualty Insurance Company's Motion for Summary Judgment on Negligent Workmanship Exclusion ("Plaintiffs' Opposition to Ohio Casualty's (continued...)

Thus, the claims before the court for which summary judgment is sought are claims for breach of contract, violation of the TDTPA and the Texas Insurance Code, breach of the duty of good faith and fair dealing, misrepresentation, fraud by negligent misrepresentation, waiver, and estoppel.

A.   **Ohio Casualty's Motions for Summary Judgment and Motion to Compel Discovery from Plaintiffs**

In pertinent part plaintiffs allege:

6.   This matter revolves largely around a first party insurance dispute regarding the extent of damages and amount of loss suffered at the Plaintiffs' property (the "Property") in this matter.   In addition to seeking economic and penalty-based damages from Ohio Casualty, Plaintiffs also seek compensation from Ohio Casualty for damages they caused by improperly evaluating the extensive losses associated with this case, and for loss of rental income to the business sustained by the covered loss.

.   .   .

8.   Prior to the occurrence in question, Plaintiffs purchased a property insurance policy from Ohio Casualty to cover the Property at issue in this case for a loss due to water damage and "for all perils possible."

9.   On September 13, 2008, Plaintiffs sustained damage to the Property through Hurricane Ike.   Ohio Casualty paid for the roof of the Property to be replaced, as part of a covered loss.

10.  The roof was replaced by Ironwood Construction on November 1, 2010.

---

[1](...continued)
MSJ on Negligent Workmanship Exclusion"), Docket Entry No. 55, p. 4 ("Plaintiffs conceded to Defendant's argument regarding the negligence claim, and filed an Unopposed Second Amended Complaint contemporaneously with their brief, on February 4, 2014, **only removing the negligent claims handling cause of action and removing another defendant previously released from the action**.").

11.   In early November 2011, the Plaintiffs began to experience water intrusion into the buildings interior as a result of overflow and "back-up" of the buildings storm gutter system. In the aftermath, Plaintiffs relied on Ohio Casualty to help begin the rebuilding process. By and through its policy of insurance, Plaintiffs were objectively insured for the subject losses in this matter.[2]

Defendant Ohio Casualty has filed two motions for summary judgment; one seeking summary judgment based on res judicata, collateral estoppel, and accord and satisfaction, and one based on exclusions contained in the plaintiffs' insurance policy.

1.   Motion for Summary Judgment Based on Res Judicata, Collateral Estoppel, and Accord and Satisfaction

In its initial summary judgment motion Ohio Casualty argues that it is entitled to summary judgment because plaintiffs' claims are barred by res judicata and collateral estoppel, plaintiffs have already settled all claims arising from Hurricane Ike, and Texas law precludes any negligence claims that plaintiffs have asserted or attempted to assert against it in this action. In response to the filing of Ohio Casualty's first motion for summary judgment, plaintiffs sought and obtained leave to file Plaintiffs' Second Amended Complaint (Docket Entry No. 49). Plaintiffs' Second Amended Complaint omits the negligence claims originally asserted against Ohio Casualty.[3] Since Plaintiffs' Second Amended Complaint

---

[2]Plaintiffs' Second Amended Complaint, Docket Entry No. 49, pp. 2-3 ¶¶ 6-11.

[3]See id.

is now the live complaint in this action, Ohio Casualty's motion for summary judgment on plaintiffs' negligence claims will be declared moot.

Asserting that all of the claims that plaintiffs have asserted against it in this action arise from damages suffered when Hurricane Ike passed through Spring, Texas, in 2008, Ohio Casualty argues that the plaintiffs' claims are all barred by res judicata and collateral estoppel because "(1) those claims have previously been disposed of in Civil Action No. 4:11-CV-1525, (2) Plaintiffs have agreed to settle all claims against Defendant arising out of Hurricane Ike, and (3) Plaintiffs have no sustainable cause of action against Defendant."[4]

Plaintiffs respond that Ohio Casualty is not entitled to summary judgment because the claims asserted in the complaint currently before the court do not arise from Hurricane Ike but, instead, "from a covered storm loss in or around November 2011."[5] Plaintiffs also argue that they "never reached an accord with Defendants and never signed any documentation purporting to settle all remaining claims against Defendants arising from the 2008 Hurricane Ike Claim."[6]  Plaintiffs contend that

---

[4]Ohio Casualty's MSJ, Docket Entry No. 39, p. 2.

[5]Plaintiffs Mag-Dolphus, Inc., Gerald Maggard, and Jan Maggard's Brief in Opposition to Defendant Ohio Casualty Insurance Company's Motion for Summary Judgment ("Plaintiffs' Opposition to Ohio Casualty's MSJ"), Docket Entry No. 46, p. 11 ¶ 18.

[6]Id. at 12 (heading above ¶ 22).

[t]he storm event that caused the loss referenced in this matter occurred more than three years after the Hurricane Ike loss. After the storm, Plaintiffs properly filed a claim for the new loss. After Defendant failed to properly adjust the loss in accordance with Texas state law, Plaintiffs properly filed a suit in Montgomery County District Court for the new loss. After the suit was removed by Defendant to Federal Court, Plaintiffs properly and timely filed an Amended Complaint adding additional parties and clarifying for the Court the factual background of the action. The current action before the Court is an action derived from the November 2011 loss, not a continuing loss from the September 2008 claim. As such res judicata and collateral estoppel do not prevent the action before the court from going forward, and Defendant's summary judgment as to those bases must therefore be denied.[7]

Plaintiffs also contend that they "never reached an accord with Defendants, nor was such a purported accord ever satisfied. As such, Defendant's summary judgment as to those bases must therefore be denied."[8]

(a)  Res Judicata and Collateral Estoppel

"This 'rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion.'" Comer v. Murphy Oil USA, Inc., 718 F.3d 460, 466 (5th Cir. 2013) (quoting Test Masters Educational Services, Inc. v. Singh, 428 F.3d 559, 571 (5th Cir. 2005)). See also Taylor v. Sturgell, 128 S. Ct. 2161, 2171 (2008) ("The preclusive effect of a judgment is defined

---

[7]Id. at 12 ¶ 21.

[8]Id. at 13-14 ¶ 25.

by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). Federal law governs the preclusive effect accorded to a prior federal judgment in a diversity action. See Rabo Agrifinance, Inc. v. Terra XXI, Ltd., 583 F.3d 348, 353 (5th Cir. 2009) (quoting Reimer v. Smith, 663 F.2d 1316, 1325 n.9 (5th Cir. 1981) ("When a federal court sitting in diversity is considering the collateral estoppel effect of a prior federal judgment, this Circuit applies federal common law.")).

### (1)  Res Judicata

"True res judicata 'has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.'" Comer, 718 F.3d at 467 (quoting Singh, 428 F.3d at 571). The parties only dispute the fourth element:  whether the same claim or cause of action was involved in both actions.

To determine whether the same claim or cause of action was involved in a prior action, the Fifth Circuit applies the "transactional test" of § 24 of the Restatement (Second) of Judgments. See Ries v. Paige (In re Paige), 610 F.3d 865, 872 (5th Cir. 2010).  Under the "transactional test" a claim or cause of

action is the same if it relates to the same "transaction, or series of transactions, out of which the [original] action arose." Id. (quoting Restatement (Second) of Judgments § 24(1) (1982)).

> What factual grouping constitutes a "transaction," and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Id. (quoting Restatement (Second) of Judgments § 24(2) (1982)). When applying the "transactional test" the critical issue is "whether the two actions under consideration are based on 'the same nucleus of operative facts' . . . 'rather than the type of relief requested, substantive theories advanced, or types of rights asserted.'" Id. (internal quotation marks and citations omitted). The factual predicate controls even when "several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability." Id. at 873 (quoting Restatement (Second) of Judgments cmt. c (1982)). "The rule is that res judicata 'bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication, . . . not merely those that were adjudicated.'" Howe v. Vaughan (Matter of Howe), 913 F.2d 1138, 1144 (5th Cir. 1990)(quoting Nilsen v. City of Moss Point, Mississippi, 701 F.2d 556, 560 (5th Cir. 1983) (emphasis in original)).

-12-

In support of their argument that the claims asserted in this action are not barred by res judicata because they do not arise from the same nucleus of operative facts as did their claims in the prior action, Gerald and Jan Maggard each submit an affidavit in which they state that the loss currently in dispute occurred

> [i]n or around early November of 2011, almost one year . . . after the new roof was installed, [when] a heavy storm caused water to pour into the propert[y's] interior through the roof system.  The water flow was so heavy that it damaged the interior of the building, including electrical and telephone systems, as well as a multitude of items stored inside the commercial structure.[9]

In its reply brief, Ohio Casualty acknowledges that

> [i]n their original Petition filed on February 4, 2013, Plaintiffs alleged that their property was damaged in November 2011 from water overflow and "back up" of the building storm gutter system.  This petition makes no mention of Hurricane Ike.  The Petition clearly states that "[i]n early November 2011, the Plaintiffs began to experience water intrusion."[10]

Moreover, asserting that it produced a copy of the applicable policy to the plaintiffs on July 2, 2013, Ohio Casualty argues that § I-Property (B)(3) of that policy reads:  "We will not pay for loss or damage caused by or resulting from a . . . (c) Negligent Work."[11]  The certified copy of the insurance policy attached to

---

[9]See paragraph 10 of Affidavit of Gerald Maggard and Affidavit of Jan Maggard, Exhibits A and B, respectively, to Plaintiffs' Opposition to Ohio Casualty's MSJ, Docket Entry Nos. 46-1 and 46-2.

[10]Defendants' Reply to Plaintiffs' Brief in Opposition to The Ohio Casualty Insurance Company's Motion for Summary Judgment ("Defendants' Reply"), Docket Entry No. 50, p. 2.

[11]Id. at 2-3 (quoting Exhibit A, Certified Copy of the Insurance Policy No. BZO (12) 52964857, Docket Entry No. 50-1, p. 42).

Ohio Casualty's reply brief is for the policy period "From 05/26/2011 To 05/26/2012."[12]

Ohio Casualty's acknowledgment that the damage for which plaintiffs seek recovery in this action did not occur before November of 2011 shows that the damage at issue happened long after Hurricane Ike, which occurred in September of 2008. Moreover, the policy period for the insurance policy that Ohio Casualty says governs the claims asserted in this action is from May 26, 2011, to May 26, 2012, a period that is also long after Hurricane Ike occurred in September of 2008. Nevertheless, Ohio Casualty argues that

> [p]laintiffs' current claim is that Hurricane Ike caused further damage in November of 2011. This was while Civil Action No. 4:11-CV-1525 was still pending. Any claim related to Hurricane Ike damage, and occurring before summary judgment was granted on September 12, 2012 should have been raised in Civil Action No. 4:11-CV-1525. Based on Texas law, these claims are barred by res judicata.[13]

Plaintiffs' pleadings and Ohio Casualty's briefing both show that the claims at issue in this action are for damage that occurred over three years after Hurricane Ike, and involve an insurance policy that was not in effect when Hurricane Ike occurred. The claims asserted in the current action arise from Ohio Casualty's alleged failure to investigate and settle claims filed for damage suffered during storms that occurred no earlier

---

[12]Certified Copy of Insurance Policy No. BZO (12) 52964857, Docket Entry No. 50-1 at 2.

[13]Ohio Casualty's MSJ, Docket Entry No. 39, p. 8.

than November of 2011, while the claims at issue in the previous action arose from Ohio Casualty's alleged failure to investigate and settle claims filed for damages suffered during Hurricane Ike. Moreover, the undisputed facts establish that the roof of plaintiffs' structure was replaced in 2010.[14]  Thus, the roof that was allegedly damaged in November of 2011 was not the same roof that was damaged during Hurricane Ike in 2008.  The wrongful conduct at issue in this action is Ohio Casualty's alleged failure to investigate and settle insurance claims submitted for damage caused by storm events that occurred no earlier than November of 2011, while the wrongful conduct at issue in the prior action was Ohio Casualty's alleged failure to investigate and settle insurance claims submitted for damage caused by Hurricane Ike in September of 2008.

The court therefore concludes that the wrongs alleged in this action do not arise from the same nucleus of operative facts as the wrongs alleged and adjudicated in the prior action because the wrongs alleged in this action occurred subsequent to the wrongs

---

[14]See paragraph 8 of Affidavit of Gerald Maggard and Affidavit of Jan Maggard, Exhibits A and B, respectively, to Plaintiffs' Opposition to Ohio Casualty's MSJ, Docket Entry Nos. 46-1 and 46-2. See also Defendant's Reply, Docket Entry No. 50, p. 4 (quoting report of plaintiffs' expert, James B. DeLaPlaine, stating: "Repairs performed following **Hurricane Ike** included full replacement of the metal roof panels and roof insulation and extensive repairs to the interior of the contiguous office area and the wood framed office area in the warehouse.  Subsequent to the roof replacement and the completion of all **Hurricane Ike** related interior repairs, roof leaks occurred during rain events causing damage . . .").

alleged in the prior action.   See Blair v. City of Greenville, 649
F.2d 365, 368 (5th Cir. 1981) ("A subsequent wrong constitutes a
new cause of action."). Accordingly, the claims that plaintiffs
have asserted in this action are not barred by res judicata, and
Ohio Casualty is not entitled to summary judgment on this basis.

### (2)   Collateral Estoppel

Like res judicata, application of the doctrine of collateral
estoppel in a diversity suit involving a prior federal judgment is
governed by federal law. Rabo Agrifinance, 583 F.3d at 353 (citing
Reimer, 663 F.2d at 1325 n.9.   See also Hardy v. Johns-Manville
Sales Corp., 681 F.2d 334, 337 (5th Cir. 1982). To establish
collateral estoppel under federal law a party must make three
showings:

> (1)   that the issue at stake be identical to the one
> involved in the prior litigation;
>
> (2)   that the issue has been actually litigated in the
> prior litigation; and
>
> (3)   that the determination of the issue in the prior
> litigation has been a critical and necessary part
> of the judgment in that earlier action.

Rabo Agrifinance, 583 F.3d at 353 (citing Wehling v. CBS, 721 F.2d
506, 508 (5th Cir. 1983)).   "The parties to the suits need not be
completely identical, so long as the party against whom estoppel
applies had the full and fair opportunity to litigate the issue in
the previous lawsuit."   Id.

-16-

Ohio Casualty argues that collateral estoppel bars plaintiffs' current action against it because "[t]he acts and omissions by Ohio Casualty in regards to Plaintiffs' Hurricane Ike claim have been previously litigated."[15]   Asserting that "[p]laintiffs' current claim is that Hurricane Ike caused further damage in November of 2011,"[16] Ohio Casualty argues that

> [i]n her Opinion and Order Judge Harmon addressed all of Plaintiffs' claims that it was not fully compensated for its Hurricane Ike loss by Ohio Casualty.  She found that they were, through the appraisal process.  She also found that the appraisal process barred Plaintiffs' claims concerning claim handling.[17]

For collateral estoppel to apply the issue at stake in the current action must be identical to the issue at stake in the prior action.  <u>Rabo Agrifinance</u>, 583 F.3d at 353.  The prior action dealt with whether Ohio Casualty wrongfully failed to investigate and settle claims for damage caused to plaintiffs' structure during Hurricane Ike in September of 2008.  Although Ohio Casualty argues that "Plaintiffs' current claim is that Hurricane Ike caused further damage in November of 2011,"[18] that is not the issue at stake in the current action.  The issue in this action is whether Ohio Casualty wrongfully failed to investigate and settle claims

---

[15]Ohio Casualty's MSJ, Docket Entry No. 39, p. 8.

[16]<u>Id.</u>

[17]<u>Id.</u>

[18]<u>Id.</u>

for damage to plaintiffs' structure resulting from storms that occurred no earlier than November of 2011. The doctrine of collateral estoppel does not bar plaintiffs from litigating these claims.

> (b)   Accord and Satisfaction

"An accord and satisfaction is 'a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty.'" Kucel v. Walter E. Heller & Co., 813 F.2d 67, 70 (5th Cir. 1987) (quoting Restatement (Second) of Contracts § 281 (1981)). "Because accord and satisfaction is a contract, it requires a meeting of the minds, or an agreement." Id. (citing Flowers v. Diamond Shamrock Corp., 693 F.2d 1146, 1151-52 (5th Cir. 1982) (applying Texas law)). See also Jenkins v. Henry C. Beck Co., 449 S.W.2d 454, 455 (Tex. 1969) (stating that accord and satisfaction "rest upon a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted").

Ohio Casualty contends that

> [a]fter Summary Judgment was awarded on all Plaintiffs' claims and causes of action against Ohio Casualty in Civil Action No. 4:11-CV-1525, Plaintiffs maintained the right to appeal that order. Therefore, the parties agreed, to avoid the extra expense of an appeal, to settle all Hurricane Ike claims. On November 2, 2012 (a year after Plaintiff's current allegations of water intrusion as a result of the improperly installed roof), Plaintiffs were sent, through their counsel of record, a settlement agreement and release of all claims and a

settlement draft numbered 86837001 in the amount of
$2,500 made payable to Mag-Dolphus, Inc.

The settlement check states that payment is for
"Full & Final Settlement of All Claims from 9/30/2008
Wind Damage Loss".[19]

Plaintiffs dispute Ohio Casualty's argument that they agreed

to settle any and all claims from Hurricane Ike for $2,500.00.

Gerald and Jan Maggard have submitted an affidavit stating that

[w]e still had expenses that were not covered by the
appraisal award, but which we felt were covered by our
insurance policy. Mark Junell, our attorney at the time,
informed us that The Ohio Casualty Insurance Company
wanted to offer us $2,500.00 to settle our remaining
claims from the September 18, 2008 wind damage claim. We
felt that amount was not sufficient to settle our
remaining claims. We did not agree to accept $2,500.00
to settle that claim. We never signed a Release to
settle that claim. We never endorsed nor received a
check for $2,500.00. To this date, we never heard
anything further from our attorney, nor The Ohio Casualty
Insurance Company regarding a $2,500.00 settlement from
the September 18, 2008 wind damage claim.[20]

Ohio Casualty has submitted a copy of a check payable to

Mag-Dolphus, Inc. in support of its argument that following the

summary judgment granted in the prior action, plaintiffs agreed to

settle all outstanding Hurricane Ike-related claims for $2,500.00,

but Ohio Casualty has not submitted evidence capable of

establishing that the check was cashed or that plaintiffs agreed to

settle their remaining claims. Thus, the court concludes that Ohio

---

[19]Id. at 8-9 (citing Exhibit E, Docket Entry No. 39-9, copy of
check payable to Mag-Dolphus, Inc. and the Sheehy Ware Firm).

[20]See paragraph 7 of Affidavit of Gerald Maggard and Affidavit
of Jan Maggard, Exhibits A and B, respectively, to Plaintiffs'
Opposition to Ohio Casualty's MSJ, Docket Entry Nos. 46-1 and 46-2.

Casualty has failed to establish that it is entitled to summary judgment on the claims asserted in this action because those claims are subject to an accord and satisfaction reached in 2012.

### 2. Motion for Summary Judgment Based on Policy Exclusions

In its second motion for summary judgment Ohio Casualty argues that the claims plaintiffs have asserted against it in this action are barred "[b]ecause the cause of Plaintiffs' alleged losses is the negligent work of a roof installer,"[21] and the policy that plaintiffs purchased for the period of May 26, 2011, to May 26, 2012, "specifically excludes from coverage losses resulting from negligent work."[22] Asserting that the policy's negligent work exclusion bars the plaintiffs' breach of contract claim, Ohio Casualty argues that it is entitled to summary judgment on all of plaintiffs' claims because absent a valid breach of contract claim, plaintiffs' extra-contractual claims fail.[23] Plaintiffs respond that the loss at issue is a covered loss, the negligent workmanship exclusion is ambiguous, and as a matter of public policy the insurance policy at issue should not be interpreted to exclude the work done to replace a roof as part of a covered loss.[24]

---

[21]Ohio Casualty's MSJ on Negligent Workmanship Exclusion, Docket Entry No. 51, p. 5.

[22]Id.

[23]Id. at 8-9.

[24]Plaintiffs' Opposition to Ohio Casualty's MSJ on Negligent Workmanship Exclusion, Docket Entry No. 55, pp. 5, 8-12.

(a)   The Negligent Work Exclusion Applies to Plaintiffs'
Loss

Under Texas law an insured has the burden of showing that damage to its property is covered by an insurance policy. Fiess v. State Farm Lloyds, 392 F.3d 802, 807 (5th Cir. 2004). If the insured bears this burden, the insurer has the burden of establishing that the cause of the damage is excluded under the policy. Id. If an insurer establishes that an exclusion applies, the insured has the burden of proving the application of an exception to the exclusion. Id. If covered and non-covered perils combine to create a loss, the insured may recover the amount caused by the covered peril. Id. See also Travelers Indemnity Co. v. McKillip, 469 S.W.2d 160, 162-63 (Tex. 1971) (discussing shifting burdens of proof and insured's need to segregate loss between covered and non-covered perils); Paulson v. Fire Insurance Exchange, 393 S.W.2d 316, 319 (Tex. 1965) (holding that insured must produce evidence affording a reasonable basis for estimating proportionate part of damage caused by a covered peril). Without disputing that plaintiffs have met their initial burden by showing that their property suffered damage, Ohio Casualty argues that plaintiffs' claims are barred by the policy's negligent work exclusion. In pertinent part that exclusion provides:

SECTION I - Property

. . .

B.   Exclusions

. . .

-21-

3.  We will not pay for loss or damage caused
    by or resulting from any of the following
    Paragraphs a. through c.  But if an
    excluded cause of loss that is listed in
    Paragraphs a. through c. results in a
    Covered Cause of Loss, we will pay for
    the loss or damage caused by that Covered
    Cause of Loss.

           . . .

c.  Negligent Work

    Faulty, inadequate or defective:

           . . .

    (2)  Design, specifications, workmanship,
         repair, construction, renovation,
         remodeling, grading, compaction;

    (3)  Materials used in repair,
         construction, renovation or
         remodeling; or

    (4)  Maintenance;

    of part or all of any property on or
    off the described premises.[25]

Quoting from Plaintiffs' Second Amended Complaint, Ohio Casualty argues that "Plaintiffs concede the fact that improper installation is the source of their damages."[26]  Ohio Casualty explains that

    Plaintiffs allege that their roof was completely replaced
    by Ironwood Construction on November 1, 2010.  In early
    November 2011 the Plaintiffs allege they began
    experiencing water intrusion into the building's interior

_____

[25]Ohio Casualty Policy No. BZO (12) 52964857, Docket Entry
No. 51-1 pp. 38, 42, § I.B.3.

[26]Ohio Casualty's MSJ on Negligent Workmanship Exclusion,
Docket Entry No. 51, p. 5.

-22-

"as a result of overflow" and "back-up" of the building's
storm gutter system.[27]

Ohio Casualty also points out that plaintiffs have added Ironwood

Construction as a defendant and alleged that "[t]he roof and gutter

system that Ironwood installed did not resist water intrusion."[28]

Ohio Casualty argues that "[b]ased on Plaintiffs' expert reports,

it is clear that their losses, if any, are not a result of an

isolated loss event but a continuing symptom of negligent work from

the roof installation."[29]  Ohio Casualty argues that

> Plaintiffs have designated James B. DeLaPlaine as an
> expert in this case.  His report was produced on
> December 6, 2013.  This report includes opinions as to
> the cause of water intrusion into the building these are:
>
> (1)   RTMI observed openings and unsealed joints in the
>       sheet metal ridge vents that may be the source of
>       water entering the insulation blankets draped below
>       the roof deck[;]
>
> (2)   RTMI observed the gutter profile and noted that the
>       front panel of the gutter is taller than the rear
>       panel.  RTMI also observed that the rear panel of
>       the gutter was fastened to the underside of the
>       roof deck.   The gutter profile and point of
>       attachment create a condition where water can leak
>       into the building and down the interior face of the
>       wall panels before water can flow over the front of
>       the gutter.
>
> Unsealed joints and improper installation of the
> gutters are "negligent work" of the roofer and therefore

---

[27]Id. at 6 (quoting Plaintiffs' Second Amended Complaint,
Docket Entry No. 49, ¶¶ 10-11).

[28]Id. (quoting Plaintiffs' Second Amended Complaint, Docket
Entry No. 49, ¶ 28).

[29]Id. at 7.

loss caused by these deficiencies are excluded from coverage under the policy.

Plaintiffs' designated expert Kevin Bate stated that he inspected [the] roof on several occasions.   He concluded that the causes of the water intrusion [i]nto Plaintiffs' building were that [t]he roof eave was not installed correctly and that long fasteners were installed through a downspout bracket.   He also has photos which he allege[s] show other roof installation issues including rubber closures installed on top of installation, n[o] eave trim being installed and no urethane sealant at the PBR leg.   He also concluded that tape sealer was improperly installed at the fasteners. These causes of loss are the result of negligent work which is an excluded peril under the policy.[30]

Without disputing Ohio Casualty's contention that their own expert reports establish that the roof installed on their property in 2010 was negligently installed and that the negligent installation caused the roof to leak, plaintiffs argue:

24.   In their Motion for Summary Judgment, Defendants failed to include the full provision, namely the key part that reads: "[b]ut if an excluded cause of loss that is listed results in a Covered Cause of Loss, we will pay for loss or damage caused by that covered Cause of Loss." . . . Defendant contends negligent workmanship in installing the replacement roof system on the Property resulted in water intrusion and in Plaintiffs' losses in this action, and is therefore excluded.   However, a plain meaning interpretation of the <u>entire</u> language in the exclusion provision would negate that exclusion, as it resulted in a covered cause of loss; namely water intrusion into the Property.   Since the alleged excluded cause of loss resulted in a covered cause of loss, then, according to the policy, Defendant **"will pay for loss or damage caused by that Covered Cause of Loss."**

25.   Since applying the entire Negligent Workmanship Policy exclusion under the policy does not preclude

---

[30]<u>Id.</u> at 6-7 (citing Plaintiffs' Designation of Expert Witnesses, Docket Entry Nos. 33, 33-1, and 33-4).

Defendant's liability and does not prevent the action before the court from going forward, [the] Defendant's summary judgment as to that basis must therefore be denied.  At the very least, genuine issues of material fact abound in [the] Plaintiffs' claims, which defeat Defendant's burden of demonstrating the absence of a genuine issue of material fact in Plaintiffs' claims.[31]

Missing from plaintiffs' response is a cite to any evidence capable of establishing that the loss at issue was not, as Ohio Casualty contends, caused by negligent installation of the new roof in 2010.  Plaintiffs fail to discuss defendant's contention that plaintiffs' own experts consistently state that the roof leaks at issue resulted from improper installation of the new roof. Plaintiffs also fail to point to any evidence from which a reasonable trier of fact could conclude that the roof leaks were not caused by improper installation but, instead, by storm events. Although plaintiffs argue that the negligent workmanship exclusion does not exclude claims for water intrusion into the property, plaintiffs fail to cite any provision of the policy that provides coverage for such losses.[32]  Because plaintiffs have failed to cite

---

[31]Plaintiffs' Opposition to Ohio Casualty's MSJ on Negligent Workmanship Exclusion, Docket Entry No. 55, pp. 9-10 ¶¶ 24-25.

[32]See Defendant The Ohio Casualty Insurance Company's Reply to Plaintiffs' Brief in Opposition to Its Motion for Summary Judgment on Negligent Workmanship Exclusion ("Ohio Casualty's Reply to Plaintiffs' Opposition to MSJ on Negligent Workmanship Exclusion"), Docket Entry No. 58, pp. 7-9:

Plaintiffs do not explain this, but it is presumed they are arguing that while it was the improperly installed roof that allowed water to enter the building, that water intrusion is a Covered Loss as a result of the exception
(continued...)

[32] (...continued)
to the exclusion.    Initially, Defendant notes that
Plaintiffs' Disclosures do not even seek damage to the
interior of the building.    However, even if they were,
their argument that the exclusion does not apply to that
damage is incorrect when the policy is read in its
entirety.

Section I.A.3 of the policy defines "Covered Causes
of Loss" as:

"Risks of direct physical loss unless the loss is:

    a.   Excluded in Paragraph B.    Exclusions in
        Section I; or

    b.   Limited in Paragraph 4.    Limitations in
        Section I."

As previously argued, Plaintiffs' loss is excluded
as a covered Loss by Paragraph B because it was the
result of Negligent Work.  By arguing that the damage is
not excluded because the water intrusion into the
building was a "resulting covered loss" Plaintiffs are
ignoring the definition of "Covered Losses" as limited in
Paragraph 4.

Paragraph 4 states:

"We will not pay for loss or damage to:

   (1)  The interior of any building or structure
       caused by or resulting from rain, snow, sleet,
       ice, sand or dust, whether wind driven or not,
       unless:

       a.   The building or structure first
           sustains damage by a Covered Cause
           of Loss to its roof or walls through
           which the rain, snow, sleet, ice,
           sand or dust enters; or

       b.   The loss or damage is caused by or
           results from thawing of snow, sleet or
           ice on the building structure.

(continued...)

any evidence capable of establishing that the losses for which they
seek benefits were not caused by negligent installation of the
roof, the court concludes that the negligent workmanship exclusion
applies.

(b)   The Negligent Workmanship Exclusion is Not Ambiguous

Asserting that "any contract provision that is ambiguous is
construed against the drafter and therefore does not preclude the
losses suffered by Plaintiffs,"[33] plaintiffs argue that the
Negligent Workmanship Exclusion is ambiguous and should not be
enforced to preclude recovery for their losses.   "When a contract
contains an ambiguity, the granting of a motion for summary
judgment is improper because the interpretation of the instrument
becomes a fact issue."   Coker v. Coker, 650 S.W.2d 391, 394.   When
application of the pertinent rules of contract interpretation to
the face of the instrument leaves it genuinely uncertain which one
of two or more meanings is the proper meaning, the contract is
ambiguous.   Id. at 393 (citing Skelly Oil Co. v. Archer, 356 S.W.2d
774, 778 (Tex. 1962)).   "Whether a contract is ambiguous is a

---

[32](...continued)
    Plaintiffs' experts never state that the roof first
sustained damage as a result of a covered cause of loss.
All of the reports state the loss was a result of the
negligent roof installation. Therefore, the exception to
the exclusion does not apply in this case.

[33]Plaintiffs' Opposition to Ohio Casualty's MSJ on Negligent
Workmanship Exclusion, Docket Entry No. 55, p. 5 ¶ 15.   See also
id. at 11 ¶ 29.

question of law for the court to decide by looking at the contract as a whole." Id. at 394 (citing Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1980)). Missing from plaintiffs' briefing is any discussion of why the Negligent Workmanship Exclusion is ambiguous. Absent a discussion of why the exclusion is ambiguous, or why the plaintiffs' losses are not excluded but, instead, covered by an exception to the exclusion, the court has no basis on which to conclude either that the exclusion is ambiguous or that the plaintiffs' claims are, in fact, covered by the policy. A contract is not ambiguous merely because the parties proffer conflicting interpretations; "[a]n ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one [reasonable] meaning." DeWitt County Electric Cooperative, Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999). Accordingly, the court concludes that the Negligent Workmanship Exclusion at issue is not ambiguous.

> (c) The Negligent Workmanship Exclusion Does Not Violate Public Policy

Finally, plaintiffs argue that "as a matter of public policy, Defendants should not be able to enforce an interpretation of an insurance policy exclusion that would exclude the work done to replace a roof system, that was replaced under the policy, as part of a covered loss."[34]  Plaintiffs argue that

---

[34]Id. at 5 ¶ 15.

to deny Defendant's basis for summary judgment on the Negligent Workmanship Exclusion would send a clear message: that if a building is repaired as part of a covered loss, an insurer must do a thorough investigation of the completed repairs before they release depreciation money and before they renew a policy.  Failing to do so, an insurer cannot go back almost one year later and claim poor workmanship as a basis for exclusion, when i[n] fact it would have been the insurer's poor workmanship in conducting claims investigation that partially led to the loss in the first place.  As such, as a matter of public policy, Defendant's summary judgment as to that basis must therefore be denied.[35]

Ohio Casualty replies that

Plaintiffs' "public policy" argument does not create a legally recognized cause of action.  In fact, it would impose a duty on the Defendants which is not found anywhere in Texas law or in the contract which forms the basis of this action.  Plaintiffs' public policy argument is that Defendant should have done more in connection with the Hurricane Ike claim to avoid the Negligent Work of a contractor [plaintiffs] retained to repair the property.[36]

Plaintiffs have not cited any provision in the policy that was in effect during Hurricane Ike that imposed a duty on Ohio Casualty to re-inspect the property once the roof repairs were completed and prior to paying recoverable depreciation.  Moreover, as Ohio Casualty points out, "Texas courts have already found that public policy does not dictate that insurance companies monitor and attempt to enforce their clients' contracts with third parties."[37] See Jun v. Lloyds & Other Various Insurers, 37 S.W.3d 59, 69 (Tex.

---

[35]Id. at 12 ¶ 31.

[36]Ohio Casualty's Reply to Plaintiffs' Opposition to MSJ on Negligent Workmanship Exclusion, Docket Entry No. 58, p. 2.

[37]Id. at 3.

App. — Austin, 2000, pet. denied) ("Public policy does not dictate that insurance companies monitor and attempt to enforce their clients' contracts with third parties."); <u>Johnson v. American Mutual Liability Ins. Co.</u>, 559 F.2d 382, 393-94 (5th Cir. 1977) (rejecting for reasons of public policy, argument that worker's compensation insurance carrier had a duty to inspect workplace for safety). Plaintiffs have acknowledged that there is no cause of action in Texas for negligent claims handling,[38] and in Texas there is no duty of good faith and fair dealing on the part of an insurer to cover the underwriting phase of an insurance transaction. <u>See Commonwealth Lloyds Ins. Co. v. Downs</u>, 853 S.W.2d 104, 119 (Tex. App. — Fort Worth 1993, writ denied) ("Without the benefit of supporting authority or convincing rationale, we decline to extend the duty of good faith and fair dealing to cover the underwriting phase of an insurance transaction."). Thus, to deny Ohio Casualty's motion for summary judgment based on plaintiffs' public policy argument, the court would not only have to recognize either a duty or a cause of action that has not been recognized by any court applying Texas law, but would also have to ignore established law concerning an insurer's contract, tort, and underwriting duties. Without the benefit of supporting authority or convincing

---

[38]Plaintiffs' Opposition to Ohio Casualty's MSJ on Negligent Workmanship Exclusion, Docket Entry No. 55, p. 4 ¶ 11 ("Plaintiffs conceded to Defendant's argument regarding the negligence claim, and filed an Unopposed Second Amended Complaint . . . **removing the negligent claims handling cause of action**").

rationale, the court declines to do so.  Thus, the court concludes that plaintiffs' public policy argument does not provide a basis on which to deny Ohio Casualty's motion for summary judgment based on the policy's negligent workmanship exclusion.

>              (d)  Plaintiffs Fail to Identify Any Genuine Issues of
>                   Material Fact for Trial

Finally, plaintiffs argue that "[a]t the very least, genuine issues of material fact abound in Plaintiffs' claims, which defeat Defendant's burden of demonstrating the absence of a genuine issue of material fact in Plaintiffs' claims."[39]  Despite plaintiffs' argument to the contrary, plaintiffs have failed to identify any genuine issue of material fact for trial on any of the claims asserted against Ohio Casualty.  Plaintiffs have alleged causes of action against Ohio Casualty for breach of contract, violations of the TDTPA, and the Texas Insurance Code, breach of the duty of good faith and fair dealing, misrepresentation, fraud by negligent misrepresentation, waiver and estoppel.  Plaintiffs' breach of contract claim against Ohio Casualty fails because plaintiffs have failed to present evidence capable of raising a genuine issue of material fact for trial that the losses for which they seek recovery did not result from an excluded peril, i.e., negligent installation of a new roof in 2010.  Under Texas law if an insurer establishes that the cause of the loss is excluded under the

---

[39]Id. at 12 ¶ 31.

policy, the insured has the burden of proving the application of an exception to the exclusion.  Moreover, because the insured may only recover for damage caused by covered perils, the insured bears the burden of presenting evidence that will allow the trier of fact to segregate covered losses from non-covered losses.  See Feiss, 392 F.3d at 807.  Because plaintiffs fail to present summary judgment capable of establishing either that an exception to the negligent workmanship exclusion applies in this case, summary judgment is proper on plaintiffs' breach of contract claim.  Id.  Because plaintiffs' extra-contractual claims for violation of the TDTPA, the Texas Insurance Code, and the common law are all founded on an alleged breach of the insurance policy, absent a foundational breach of the policy, all of plaintiffs' extra-contractual claims fail.  See Watson v. Allstate Texas Lloyd's, 224 F. App'x 335, 342-43 (5th Cir. 2007); Bunting v. State Farm Lloyds, No. 3:98-CV-2490-BD, 2000 WL 191672, *4 (N.D. Tex. February 14, 2000) ("Having found that defendant did not breach the insurance policy, these extra-contractual claims fall like a house of cards.").  Thus, the court concludes that Ohio Casualty is entitled to summary judgment on all of the claims asserted against it in this action.

   3.   Motion to Compel Discovery

   Since the court has concluded above in § III.A.2 that Ohio Casualty is entitled to summary judgment on all of the claims that

plaintiffs have asserted against it in this action, Ohio Casualty's motion to compel discovery from plaintiffs will be declared moot.

**B.    Spring Insurance Agency's Motion for Summary Judgment**

In pertinent part plaintiffs allege that:

8.    Prior to the occurrence in question, Plaintiffs purchased a property insurance policy from Ohio Casualty to cover the Property at issue in this case for a loss due to water damage and "for all perils possible."

. . .

21.   Defendant Spring Insurance sold the Ohio Casualty Insurance policy to the Plaintiffs.  Plaintiffs specified to Spring Insurance they sought a business insurance policy that covered against "all perils possible" to the Property, including every conceivable loss to the roof of the Property through water intrusion and workmanship of repairs done.

22.   Plaintiffs' request that the roof of the Property be covered against "all perils possible" formed the basis of the bargain and was a deciding factor in Plaintiffs' decision to purchase the policy.

23.   Plaintiffs' request for coverage against "all perils possible" was understood and acknowledged by Spring Insurance.  Spring Insurance assured and negligently misrepresented to Plaintiffs that was the type of policy Plaintiffs' were purchasing and paying premium price for.  Spring Insurance omitted to mention there could possibly be any permutation or exclusion of the policy that would not cover the Property against "all perils possible."

24.   As a result of the above issues, Plaintiffs did not receive the coverage for which they had originally contracted with Spring Insurance.  Unfortunately, Plaintiffs ha[ve] therefore been forced to file this suit in order to recover damages arising from the above conduct, as well as overall from the unfair refusal to pay insurance benefits.

25.   In addition, Spring Insurance has failed to place
adequate  and  proper  coverage  for  Plaintiffs,
causing Plaintiffs to suffer further damages.  As
indicated below, Plaintiffs seek relief under the
common law, the Deceptive Trade Practices-Consumer
Protection Act and the Texas Insurance Code.[40]

Defendant Spring Insurance argues that it is entitled to
summary judgment because plaintiffs' claims against it are barred
by collateral estoppel, and because plaintiffs' claims have no
merit since the alleged misrepresentation contradicts both the
plain language of the policy and multiple letters of acknowledgment
signed on behalf of Mag-Dolphus by Gerald and Jan Maggard.

### 1.   Collateral Estoppel

As stated above in § III.A.1(a)(2), to establish collateral
estoppel under federal law, a party must make three showings:

(1)   that the issue at stake be identical to the one
involved in the prior litigation;

(2)   that the issue has been actually litigated in the
prior litigation; and

(3)   that the determination of the issue in the prior
litigation has been a critical and necessary part
of the judgment in that earlier action.

Rabo Agrifinance, 583 F.3d at 353.  The parties to the litigations
need not be completely identical, so long as the party against whom
estoppel applies had the full and fair opportunity to litigate the
issue in the previous lawsuit.  Id.

---

[40]Plaintiffs' Second Amended Complaint, Docket Entry No. 49,
p. 2 ¶ 8, pp. 5-6 ¶¶ 21-25.

Spring Insurance argues that collateral estoppel bars the claims plaintiffs have asserted against it in this action because

> [t]he facts litigated in the first suit are the same facts sought to be litigated in this suit against Spring Insurance, namely, whether Plaintiffs were compensated in full and final form for roof damages arising out of Hurricane Ike. Plaintiffs allege they were not compensated, and that Spring Insurance should be responsible for such damages because Plaintiffs allegedly relied upon a representation by Spring Insurance that the Ohio Casualty policy covered "all perils possible."[41]

Spring Insurance also argues that

> [i]n the first suit, the court rejected Plaintiffs' argument that they had not been fully compensated for Hurricane Ike losses. In the instant suit, Plaintiffs are attempting to reassert their claim for Hurricane Ike losses against Spring Insurance on the ground that Spring Insurance allegedly misrepresented the scope of coverage. Plaintiffs' claims fail under the doctrine of collateral estoppel because the court entered a Final Summary Judgment and Opinion holding that Plaintiffs were in fact compensated under the Ohio Casualty policy.[42]

For the reasons stated above in § III.A.1, the court has already concluded that the roof claims asserted in this action are not roof claims arising out of Hurricane Ike but, instead, claims arising out of damage allegedly suffered in storm events that occurred over three years later, i.e., no earlier than November of 2011. The court rejects Spring Insurance's argument that plaintiffs' claims are barred by collateral estoppel for essentially the same reasons that the court has rejected the same argument made by Ohio Casualty.

---

[41]Spring Insurance's MSJ, Docket Entry No. 45, p. 5.

[42]Id. at 6-7.

2.   <u>Misrepresentation Claims</u>

Plaintiffs' causes of action against Spring Insurance include misrepresentation, common-law fraud by negligent misrepresentation, and violation of the TDTPA.  Plaintiffs do not dispute that reliance and causation are essential elements of each of these causes of action.[43]  Plaintiffs argue that they "justifiably relied upon Defendant's representation that the policy covered 'all perils possible,' which caused them damages."[44]  Spring Insurance denies that it ever represented to plaintiffs that the Ohio Casualty policy at issue covered "all perils possible," and argues that even if it had made that representation, "Plaintiffs could not have justifiably relied upon the representation as a matter of law because it directly contradicts the plain language of the policy, as well as multiple letters of acknowledgment signed by each of the Plaintiffs."[45]  In support of this argument Spring Insurance cites both Ohio Casualty Policy No. BZO (09) 52964857 issued to Mag-Dolphus, Inc. for the period May 26, 2008, to May 26, 2009,[46]

---

[43]Plaintiffs Mag-Dolphus, Inc., Gerald Maggard, and Jan Maggard's Brief in Opposition to Defendant The Spring Insurance Agency, Inc.'s Motion for Summary Judgment ("Plaintiffs' Opposition to Spring Insurance's MSJ"), Docket Entry No. 52, p. 15 ¶ 28 (acknowledging that "[r]eliance and causation are essential elements of each of Plaintiffs' causes of action" against Spring Insurance).

[44]<u>Id.</u>

[45]Defendant Spring Insurance Agency's Motion for Summary Judgment, Docket Entry No. 45, p. 7.

[46]<u>Id.</u> at 8 (citing Exhibit G-1 at pp. 17-21, Docket Entry No. 45-12.

-36-

and Policy No. BZO (12) 52964857 issued to Mag-Dolphus for the period May 26, 2011, to May 26, 2012.[47] Spring Insurance also cites two affidavits of Forrest Strohl, an account manager with Spring Insurance, stating that Mag-Dolphus renewed its policy annually dating back to 2004, and that as part of the annual renewal process, a Mag-Dolphus representative signed a one-page letter specifically acknowledging that the policy had numerous exclusions.[48] Spring Insurance has also submitted copies of letters acknowledging that the Mag-Dolphus policy had numerous exclusions dated June 4, 2008, signed by Jan Maggard;[49] June 22, 2004, signed by Robert Adolphus;[50] May 23, 2005, signed by Robert Adolphus;[51] August 3, 2006, signed by Robert Adolphus;[52] June 21, 2007, signed by Gerald Maggard;[53] June 18, 2009, signed by Jan Maggard;[54]

---

[47]Defendant Spring Insurance Agency, Inc.'s Supplement to and Reply in Support of Motion for Summary Judgment, Docket Entry No. 56, pp. 4-5 (citing Docket Entry No. 55-5, Ohio Casualty Policy from 5/26/11 to 5/26/12, attached as Exhibit E to Plaintiffs' Response, at pages 38-42).

[48]See Affidavit of Forrest Strohl, Docket Entry No. 45-11, ¶ 3; Second Affidavit of Forrest Strohl, Docket Entry No. 56-1, ¶ 2.

[49]Docket Entry No. 45-13.

[50]Docket Entry No. 45-14.

[51]Docket Entry No. 45-15.

[52]Docket Entry No. 45-16.

[53]Docket Entry No. 45-17.

[54]Docket Entry No. 56-2.

August 25, 2010, signed by Jan Maggard;[55] June 24, 2011, signed by
Jan Maggard;[56] and October 31, 2012, signed by Jan Maggard.[57]  The
acknowledgment letter for the policy at issue in this action, i.e.,
the policy effective from May 26, 2011, to May 26, 2012, states:

> Please note that the above policy provide[s] **NO** coverage
> for flood, water, earthquake, fungus or bacteria, mold,
> pollution, asbestos, glass, contents of any kind, workers
> compensation, employee related practices, owned autos,
> non-owned autos, hired autos, robbery, or burglary of
> money or securities, owned or non-owned automobiles, or
> umbrella/excess liability.[58]

Texas law provides a cause of action against an insurance
agent for negligent misrepresentation; and an agent who
misrepresents specific policy terms prior to a loss may violate the
Texas Insurance Code or TDTPA if the insured's reliance upon that
misrepresentation actually causes the insured to incur damages.
See Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999)
(citing Liberty Mutual Ins. Co. v. Garrison Contractors, Inc., 966
S.W.2d 482 (Tex. 1998) (agent misrepresented the amount of premium
due under the policy), and State Farm Fire & Casualty Co. v. Gros,
818 S.W.2d 908 (Tex. App. — Austin 1991, no writ) (agent misrepre-
sented that damage to home from mudslide was covered under
homeowner's policy)).  In May v. United Services Association of

---

[55]Docket Entry No. 56-3.

[56]Docket Entry No. 56-4.

[57]Docket Entry No. 56-5.

[58]Docket Entry No. 56-4.

<u>America</u>, 844 S.W.2d 666, 669 (Tex. 1992), the Texas Supreme Court observed that "it is established in Texas that an insurance agent who undertakes to procure insurance for another owes a duty to a client to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so."  The <u>May</u> court noted that agents had been held liable in cases where "the agent induced the plaintiff to rely on his performance of the undertaking to procure insurance, and the plaintiff reasonably, but to his detriment, assumed that he was insured against the risk that caused his loss."  <u>Id.</u>

Plaintiffs point to no evidence demonstrating that Spring Insurance made any false representations about specific terms of their policy including, <u>inter alia</u>, the negligent work exclusion that Ohio Casualty argues excludes coverage for the claims at issue in this action.  Plaintiffs have neither presented any evidence nor cited any authority capable of establishing that Spring Insurance had a duty to disclose specific omitted material facts that rendered its other statements false, or that caused plaintiffs to suffer injury.  Nor have plaintiffs cited any evidence capable of establishing that Spring Insurance induced them to rely on its performance of its undertaking to procure insurance, or that plaintiffs reasonably, but to their detriment, assumed that they were insured against the risks that caused the loss for which they now seek insurance benefits.  Instead, without citing any supporting evidence, plaintiffs merely assert in their response to

-39-

Spring Insurance's motion for summary judgment that they "justifiably relied upon Defendant's representation that the policy covered 'all perils possible.'"[59]  Absent admissible evidence of some specific, affirmative misrepresentation by Spring Insurance about the policy at issue, plaintiffs' mistaken belief about the scope or availability of coverage is not actionable under the TDTPA or the Texas Insurance Code.  See Moore v. Whitney-Vaky Ins. Agency, 966 S.W.2d 690, 692-93 (Tex. App. — San Antonio 1998, no writ) (citing Sledge v. Mullin, 927 S.W.2d 89, 94 (Tex. App. — Fort Worth 1996, no writ)).

Because plaintiffs have failed to cite any evidence capable of establishing that Spring Insurance made any false representations about specific terms of their policy, that Spring Insurance had a duty to disclose specific omitted material facts that rendered its other statements false, that Spring Insurance induced them to rely on its performance of its undertaking to procure insurance, or that plaintiffs reasonably, but to their detriment, assumed that they were insured against the risks that caused the loss for which they now seek insurance benefits, the court concludes that Spring Insurance is entitled to summary judgment on plaintiffs' claims for misrepresentation, common-law fraud by negligent misrepresentation, and violation of the Texas Deceptive Trade Practices Act.

---

[59]Plaintiffs' Opposition to Spring Insurance's MSJ, Docket Entry No. 52, p. 15 ¶ 28.

## IV.  <u>Plaintiffs' Motion for Leave to Supplement Expert Report</u>

On March 18, 2014, plaintiffs filed Plaintiffs Mag-Dolphus, Inc., Gerald Maggard, and Jan Maggard's Opposed Motion for Leave to Supplement Expert Report (Docket Entry No. 59).  Although almost five months have passed since plaintiffs filed this motion, no brief in opposition has been filed.  Accordingly, this motion will be granted.

## V.  <u>Conclusions and Order</u>

On December 30, 2013, plaintiffs filed a Stipulation of Dismissal as to Dallas National Insurance Company Only (Docket Entry No. 37), and the court entered an Order dismissing with prejudice all of the claims that plaintiffs have asserted or attempted to assert against Dallas National Insurance Company (Docket Entry No. 38).  Accordingly, Defendant Dallas National's Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6) (Docket Entry No. 34) is **MOOT**.

For the reasons stated above in § III.A.1 Defendant The Ohio Casualty Insurance Company's Motion for Summary Judgment (Docket Entry No. 39) is **DENIED.**  For the reasons stated above in § III.A.2, Defendant The Ohio Casualty Insurance Company's Motion for Summary Judgment on Negligent Workmanship Exclusion (Docket Entry No. 51) is **GRANTED**.  For the reasons stated above in § III.A.3, Defendant The Ohio Casualty Insurance Company's Motion to Compel Discovery from Plaintiffs (Docket Entry No. 67) is **MOOT.**

For the reasons stated above in § III.B, Defendant Spring Insurance Agency, Inc.'s Motion for Summary Judgment (Docket Entry No. 45) is **GRANTED**.

For the reasons stated above in § IV, Plaintiffs Mag-Dolphus, Inc., Gerald Maggard, and Jan Maggard's Opposed Motion for Leave to Supplement Expert Report (Docket Entry No. 59) is **GRANTED**.

Pursuant to the court's grant of summary judgment to The Ohio Casualty Insurance Company and to Spring Insurance Agency, Inc., the claims that plaintiffs have asserted against these two defendants are **DISMISSED WITH PREJUDICE.**

**SIGNED** at Houston, Texas, on this 13th day of August, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE